In re JIM KELLY FORD OF DUNDEE, LTD., Debtor.

FORD MOTOR CREDIT COMPANY, Appellant,

v.

JIM KELLY FORD OF DUNDEE, LTD., Appellee.

No. 80 C 3447.

United States District Court, N. D. Illinois, E. D.

Dec. 8, 1980.

Supplemental Memorandum Opinion and Order March 17, 1981.

Richard M. Bendix, Jr., Scott Bieber, Schiff, Hardin & Waite, Chicago, Ill., for appellant.

Nicholas G. Dozoryst, II, Chicago, Ill., for appellee.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This action is an appeal by Ford Motor Credit Company ("Ford Credit") from Bankruptcy Judge Eisen's order in this matter[1] authorizing debtor in possession Jim Kelly Ford of Dundee, Ltd. ("Kelly Ford") to withdraw $13,271.47 from a fund to which Ford Credit claims a security interest. For the reasons stated in this memorandum opinion and order, Judge Eisen's order is affirmed.

### Facts

On July 8, 1964 Kelly Ford, a franchised Ford Motor Company dealer, entered into an agreement with Ford Credit (the "Agreement") under which Ford Credit agreed to finance Kelly Ford's automobile inventory. In return, Kelly Ford granted Ford Credit a security interest in the automobiles comprising the inventory and agreed to repay Ford Credit the full amount of Ford Credit's loan with respect to each automobile promptly upon its sale. In addition, Paragraph 5 of the Agreement provided:

> FMCC [Ford Credit] shall at all times have the rights to offset and apply any and all credits, monies, or other properties of dealer [Kelly Ford] in FMCC's possession or control against any obligation of the dealer to FMCC.

On February 11, 1980 Kelly Ford filed a voluntary petition under Chapter 11 of the Bankruptcy Code ("Code"). At that time it was "out-of-trust" in that it had failed to reimburse Ford Credit in connection with the pre-petition sale of automobiles for which Ford Credit had extended $40,000 in credit under the Agreement. Ford Credit invoked Agreement Paragraph 5 and refused to remit to Kelly Ford two sums it was otherwise entitled to: $13,271.47 in drafts drawn by Kelly Ford on Ford Credit for three retail contracts it had assigned to Ford Credit, and $10,696.66 held by Ford Credit in Kelly Ford's Dealer Proceeds Withheld ("DPW") account.[2]

On February 20, 1980 Kelly Ford moved for a temporary restraining order requiring Ford Credit to relinquish those sums. Judge Eisen directed that the entire amount be placed in an escrow account (the "Fund") pending further order of the court.

Finally, on May 6, 1980 Kelly Ford presented an Application for Leave To Pay Expenses of Preservation and Liquidation of Collateral, seeking to invade the Fund to pay certain operating expenses and insurance premiums. After an evidentiary hearing, Judge Eisen granted the application up to $13,271.47—the amount of the dishonored drafts—under Code § 506(c).

### Discussion

Code § 506(c) provides:

---

1. *In re Jim Kelly Ford of Dundee, Ltd.*, 80 B 1627. Judge Eisen's order was issued May 16, 1980 after a hearing on May 8 (reference to that hearing will be made in the form "Tr. —").

2. The DPW account is funded with a portion of the unearned finance charge contained in retail installment sales contracts that the debtor assigns to Ford Credit. A portion of the money in the DPW account becomes earned when final payment is made on a retail installment sales contract that is assigned to Ford Credit and from which the DPW account is, in part, derived.

The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

Applying that provision, Judge Eisen allowed Kelly Ford to withdraw a portion of the Fund to pay certain of its operating expenses.[3] In his view, continued operation of the business would facilitate sales of remaining automobile inventory in which Ford Credit possessed a security interest, thereby conferring "benefit" on Ford Credit by generating sale proceeds from which its security interest might ultimately be satisfied.

Ford Credit contends that Judge Eisen misapplied Section 506(c) to the facts of this case. Specifically, it urges that:

1. "Property" refers in this instance only to the Fund, and "an allowed secured claim" refers only to the $40,000 of credit extended to (but not repaid by) Kelly Ford under the Agreement.

2. All the operating expenditures Judge Eisen authorized to be paid with money from the Fund were unrelated to the *pertinent* property or secured claim, but rather were to be made in connection with Ford Credit's separate secured claim on unsold inventory.

Thus Ford Credit contends that Judge Eisen exceeded his authority under the statute, for expenditures are allowable only in connection with the preservation or disposition of the "property" from which the money for such expenditures is taken. Furthermore, it asserts, expenditures must benefit the holder of a secured claim with respect to the specific claim secured by the "property" from which the expenditure is made, and may not simply benefit an unrelated interest, even though that interest is held in the same debtor's estate.

■ Ford Credit's general proposition is consistent with the purpose of Section 506(c): to ensure that the holder of an interest in the bankrupt's estate bears expenses during disposition no greater than (and related to) its proportionate interest therein. H.R.Rep.No.595, 95th Cong. 1st Sess. 356–57 (1977); S.Rep.989, 95th Cong.2d Sess. 68 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. However, in seeking to apply that principle to this case, Ford Credit has glossed over crucial facts:

1. Ford Credit's "interest in the bankrupt's estate"—its security interest—encompasses not only the Fund but also Kelly Ford's unsold inventory. *All* those assets of the bankrupt's estate are the "property securing [Ford Credit's] secured claim" as that term is used in Section 506(c).

2. On the obverse side of the coin, under Agreement Paragraph 5 the Fund—the part of the "property" in Ford Credit's possession—could be set off not only against Kelly Ford's failure to repay loans on automobiles it had sold (the out-of-trust amount) but against *any* obligation it owed to Ford Credit (emphasis added):

FMCC [Ford Credit] shall at all times have the rights to offset and apply any and all credits, monies, or other properties of dealer in FMCC's possession or control *against any obligation of the dealer* [Kelly Ford] to FMCC.

Those obligations comprised both delinquent loan repayments on sold vehicles and outstanding loans made in connection with remaining inventory.

3. Ford Credit effectively contends that *in this instance* the Fund was only intended to be a security for the $40,000 in unpaid loans, so that its application should be comparably limited. However, that contention is really one of hindsight. Kelly Ford filed its Chapter 11 petition on February 11, 1980, at which time Ford Credit had not indicated that it would set-off the Fund against the $40,000 loan delinquency. In fact, at that date Ford Credit was "uncertain as to whether or not the debts owed to us had been paid" (Tr. 126). Only after the filing of the petition, when all of Ford Credit's security interests (including the in-

---

**3.** Judge Eisen assumed, and Kelly Ford does not contest, that Ford Credit does possess a

security interest in the Fund. See paragraph 2 of his May 16, 1980 order.

terest in unsold inventory) became potentially subject to the Bankruptcy Court's jurisdiction, did Ford Credit evince its intention to retain the Fund for the specific purpose of satisfying delinquent loan payments.[4]

Accordingly the fair reading of Section 506(c) in this case is that (1) the "secured claim" of Ford Credit comprises both the out-of-trust $40,000 *and* the inventory loans and (2) the "property" securing that claim comprises both the Fund *and* the unsold inventory. Judge Eisen properly rejected Ford Credit's effort to splinter those terms into their component parts. It was reasonable for him to focus on the disposition of the unsold "property" and to charge costs of such disposition against the already realized cash that also was part of the "property" securing the claim.

There is, as Ford Credit asserts, one statutory distinction between cash collateral, such as the Fund,[5] and other collateral that has not been reduced to cash, such as the unsold inventory. But that distinction relates not to taking the latter out of the "property" ambit of Section 506(c) but to protecting the secured creditor when it is sought to be used, via Code § 363(e):

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court shall prohibit or condition such use,

sale, or lease as is necessary to provide adequate protection of such interest. In any hearing under this section, the trustee has the burden of proof on the issue of adequate protection.

In that respect, Judge Eisen was fully mindful of the requirement of "adequate protection," for he expressly granted Ford Credit a priority claim against Kelly Ford's estate under Section 507(a)(1) and (b) in the amount of money withdrawn from the Fund. Although Ford Credit contends such "protection" is patently inadequate to provide the "indubitable equivalent" provided for in Code § 361, because of the possibility of loss on the sale of the inventory, the question of what protection is "adequate" is a determination of fact for the Bankruptcy Judge that this Court will not disturb unless it is clearly erroneous. See Rule 810, Rules of Bankruptcy Procedure.[6] No such error is apparent here.

It was not clearly erroneous for Judge Eisen to read "adequate protection" in conjunction with the language of Section 506(c) to the effect that expenditures are authorized "to the extent of any benefit to the holder of [the secured] claim"—here Ford Credit. In that respect Judge Eisen again made a specific factual finding to the contrary,[7] amply supported to withstand the clearly erroneous test.

Finally, Ford Credit argues that general operating and overhead expenses

4. Suppose that Kelly Ford had not been delinquent in its loan repayment and that upon bankruptcy liquidation the proceeds from the inventory sale were insufficient to cover loans made with respect to that inventory. We may be assured that Ford Credit would then (quite properly) be asserting that the Fund secured the inventory loans, on the ground that Agreement Paragraph 5 makes its right of set-off applicable to "*any* obligation of the dealer to FMCC [Ford Credit]."

5. Code § 363(c)(2) requires a hearing before such cash collateral may be used. However, that hearing is required only to assure its use in accordance with the provisions of Section 363, and such a hearing was held in this case.

6. In its foreword to the Interim Bankruptcy Rules, the Advisory Committee notes that "existing bankruptcy rules, to the extent they are

not inconsistent with the new law, are to remain effective until they are repealed or superseded by new rules." Rule 810, or at the very least the district court's standard of review of determinations by a bankruptcy referee (now Judge) that rule articulates, appear to retain vitality under the new Code. See 1 *Collier's on Bankruptcy*, ¶ 3.03 § [8] (1980).

7. See paragraph 5 of Judge Eisen's order, finding:

> That Ford Motor Credit Company, as a secured creditor, has benefitted from the debtor's continued operations in that its collateral has been liquidated at retail at a premium over that which could reasonably be expected at forced sale.

may never be charged against a secured creditor's property. *See, e.g., In re Williams Estate*, 156 F. 934 (9th Cir. 1907). This Court discerns no definitive general rule to that effect. Each case Ford Credit cites for that proposition is factually quite particularized and distinguishable from the present case, in which the expenses involved are those directly incurred in generating what Judge Eisen has found to be "benefit" to Ford Credit. Section 506(c) itself suggests no limitation of the nature proposed by Ford Credit; its controlling principle is rather the requirement that the secured creditor derive benefit from the expenditure.[8]

### Conclusion

As stated at the outset of this opinion, the order of the Bankruptcy Court is affirmed. It is therefore not necessary for this Court to rule on Kelly Ford's motion to supplement the Designation of Record, for this Court has not considered the tendered transcript of hearing of February 29, 1980.

### SUPPLEMENTAL MEMORANDUM OPINION AND ORDER

Ford Motor Credit Company ("Ford Credit") has moved for a rehearing of this Court's December 8, 1980 memorandum opinion and order (the "Opinion"). In the Opinion this Court affirmed Bankruptcy Judge Eisen's May 16, 1980 order:

(1) authorizing debtor in possession Jim Kelly Ford of Dundee, Ltd. ("Kelly Ford") to withdraw $13,271.47 from a fund in which Ford Credit claims a security interest (the "Fund"); and

(2) providing that the Fund be replenished with any profits realized by Kelly

Ford from sales of vehicles in which Ford Credit also claims a security interest.

In its current motion Ford Credit claims that Judge Eisen had erred as a matter of law, and therefore that this Court erred in affirming Judge Eisen, in his ruling that Ford Credit had received "adequate protection" for the Fund withdrawal as required by Sections 361 and 363(e) of the Bankruptcy Code (the "Code").[1] For the reasons stated in this memorandum opinion and order, Ford Credit's motion is denied as to Kelly Ford's right to withdrawal from the Fund and granted as to the means of replenishment of the Fund.

■ In part Ford Credit's motion is predicated on its contention that the priority granted by Judge Eisen to Ford Credit under Code Sections 507(a)(1) and 507(b) could not as a matter of law constitute "adequate protection" and that both Judge Eisen and this Court failed so to recognize. To the extent that the Opinion may be read to stand for the contrary proposition, Ford Credit has raised a valid issue.[2] However, that aspect of the Opinion was at most an independent added factor buttressing the Opinion's main thrust—that Ford Credit derived "adequate protection" from the financial benefit resulting from Kelly Ford's continued operation.

By its express terms Section 361 authorizes the Bankruptcy Judge to exercise broad discretion in fashioning the "adequate protection" for the creditor. Its single touchstone is that the "relief" result in "the indubitable equivalent of such entity's interest in such property." Furthermore the question of what protection is adequate under that standard is one of fact for the

---

**8.** Importantly, Ford Credit has not been required to bear a disproportionate amount of the operating expenses; well more than half have been borne by a proposed successor dealer who would have assumed all such expenses upon its approval as successor dealer by Ford Motor Company, coupled with approval by Ford Credit.

**1.** All section references in this opinion are to the Code, 11 U.S.C.

**2.** Section 361 defines adequate protection as "(3) granting such other relief, *other than entitling such entity [the creditor] to compensation allowable under Section 503(b)(1) of this title as an administrative expense,* as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property" (emphasis added). Because Sections 507(a)(1) and (b) deal only with administrative expense priorities pursuant to Section 503(b), the issuance of such priorities cannot alone constitute adequate protection.

Bankruptcy Judge, whose determination this Court will not disturb unless it is clearly erroneous. Rule 810, Rules of Bankruptcy Procedure. Thus this Court held in the Opinion that:

> It was not clearly erroneous for Judge Eisen to read "adequate protection" in conjunction with the language of Section 506(c) to the effect that expenditures are authorized "to the extent of any benefit to the holder of [the secured] claim"—here Ford Credit. In that respect Judge Eisen again made a specific factual finding to the contrary, amply supported to withstand the clearly erroneous test.

In short, this Court affirmed Judge Eisen's findings of fact that the expenditure authorized would result in benefit to Ford Credit and that such benefit constituted "adequate protection" for Ford Credit. That benefit derived from the fact, uncontroverted on the record, that the sale of each car at retail resulted in over 17% gross "benefit" to Kelly Ford (and therefore Ford Credit), representing the difference between the average sale price (7.35% below Kelly Ford's cost) realizable from each car sold at retail and the average sale price (25% below Kelly Ford's cost) that would be realized if Kelly Ford discontinued business and the car were sold at a wholesale auction. And such benefit, to be reimbursed to the Fund out of the proceeds of vehicle sales, is not merely an "administrative expense" so as to run afoul of the problem referred to in footnote 2.

Ford Credit argues that such a concept of "benefit" is invalid because it merely represents a diminished loss in the value of its security. But that assertion rests on the faulty premise "that the value of Ford Credit's automobile collateral was roughly equal to the dealer's cost of acquiring that collateral" (Ford Credit's Rehearing Memo-

randum 7). In fact the *value* of that collateral is by definition its *fair market value*, and under Ford Credit's proposed scenario—which would force Kelly Ford's liquidation—that fair market value is what the sale of such collateral would have generated at a wholesale auto auction: only 75% of Kelly Ford's cost. Accordingly Judge Eisen's order, which would raise that 75% of cost realization to 92.65% of cost, produces a true potential benefit to Ford Credit.[3]

Had Judge Eisen provided (as this Court's Opinion incorrectly assumed he did) that Ford Credit's "adequate protection" was to derive from the excess of automobile sales receipts over what a wholesale auction would have produced—effectively a first entitlement to those excess receipts—the requirements of Sections 361 and 363(e) would have been satisfied. As Ford Credit correctly points out in its Reply Memorandum, Judge Eisen's actual order reads instead (emphasis added):

> D. That portion of proceeds representing any *profits* from sales of vehicles shall be set aside to replenish the $13,-271.47 fund.

■ Judge Eisen acknowledged that true "profit" from the continued operation of Kelly Ford—presumably the realization by Kelly Ford of net proceeds from the sale of vehicles in excess of its cost (rather than proceeds in excess of the anticipated wholesale price)—was most unlikely for the foreseeable future. On that reading of Judge Eisen's order, the protection afforded Ford Credit in the form of future "profits," effectively non-existent, must be deemed inadequate.

Accordingly this Court's December 8, 1980 memorandum opinion and order is modified in the respect set forth in this

---

**3.** At the risk of laboring the obvious, because it has become plain that neither Judge Eisen nor either party litigant (and thus, not this Court either) had addressed the issue entirely properly, the assets in which Ford Credit had a security interest *before* Judge Eisen's order comprised the Fund and the automobile inventory, the latter having a value equal to 75% of Kelly Ford's cost. So long as the diminution in the

value of the Fund ($13,271.47 under Judge Eisen's order) is matched by an enhancement in the value of the other asset—that is by an increase in the realization from sales of the automobile inventory over the 75% figure—Ford will have received "adequate protection" in the form of the "indubitable equivalent" called for by the Code.

supplemental opinion. This matter is remanded to Judge Eisen for entry of an order modifying his May 16, 1980 order in a manner consistent with this supplemental opinion.