R. LANIER ANDERSON, III, Circuit Judge:
Appellant Chrysler Credit Corporation (“Chrysler”) appeals an order of the Bankruptcy Court that allowed a debtor attempting a Chapter 11 re-organization to use “cash collateral” in which Chrysler claimed to have a security interest. We affirm the ruling of that court.
I. FACTS
George Ruggiere Chrysler Plymouth (“Ruggiere”) is a Florida corporation engaged in business as an automobile dealer. From July 24, 1979, through June 15, 1982, Ruggiere obtained extensive financing from Chrysler to operate its business and purchase inventory. To secure the complete indebtedness to Chrysler, Ruggiere granted the creditor a security interest in “all of its Accounts Receivable, Contract Rights, Chattel Paper, Inventory, Equipment and Fixtures, and all proceeds of any of the foregoing.”
On June 15, 1982, Ruggiere filed a petition under Chapter 11 of the Bankruptcy Code[1] in an attempt to re-organize its business. At the time of filing, its obligation to Chrysler exceeded the value of its collateral by over $1 million dollars.
On June 17, the dealer filed a motion under 11 U.S.C.A. § 363(c)(2) (West-1979), for authority to use cash proceeds to continue its business. The motion admitted that Chrysler had an alleged security interest in those proceeds. It also claimed that Ruggi-ere would protect Chrysler’s security interest by (1) continuing to make required interest payments, (2) providing a security interest in all collateral (apparently including any newly-acquired inventory), and (3) remitting to Chrysler the wholesale value of any automobiles sold-
The court first authorized the emergency use of a specified amount of cash between June 18 and July 9. On July 9, the court entered a “Continuing Interim Order Authorizing Use of Alleged Cash Collateral Proceeds and Regarding Adequate Protection.” The order essentially permitted Ruggiere to use gross profits obtained in the sale of vehicles.[2] The interim order was finalized by the court on August 17, 1982. Chrysler appeals from this final order, ar *1019 guing that the debtor had not “adequately protected” its all-encompassing security interest and that the court, therefore, erroneously authorized the use of gross profits from auto sales.
II. DISCUSSION
A. Statutory Regulation of “Cash Collateral”
Chapter 11 allows a debtor to formulate plans for rehabilitation without pressure from creditors. LaJolla Mortgage Fund v. Rancho El Cajon, 18 B.R. 283, 286 (Bkrtcy.S.D.Cal.1982); see 11 U.S.C.A. § 362 (West 1979). However, it also protects the interests of creditors while the debtor attempts to become financially viable. One interest Chapter 11 protects is the creditor’s interest in “cash collateral” held by the debtor.
The Bankruptcy Code defines “cash collateral” as the following:
Cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents in which the estate and an entity other than the estate have an interest.
11 U.S.C.A. § 363(a) (West 1979). A debt- or, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use “cash collateral” in its effort to rebuild. Without the availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure would be frustrated. See, generally D. Cowans, Bankruptcy Law and Practice § 11.9(6) (interim ed. 1983); Dodd, “Obtaining Operating Capital in a Chapter 11 Reorganization Proceeding Under § 363(c) & 364(d) of the Bankruptcy Code,” 1983 Annual Survey of Bankruptcy Law 217.
Opposed to the debtor’s need for use of cash collateral is the valid concern that free use of secured “property” may result in the dissipation of the estate. Because security interests are “property rights” protected by the Fifth Amendment from public taking without just compensation, Wright v. Union Central Life Ins. Co., 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184 (1940), the Bankruptcy Court cannot allow the secured interest to be threatened by improper use of cash proceeds.
To resolve this tension between debtor and creditor, 11 U.S.C.A. § 363(c)(2)(B) allows the court to authorize use of cash collateral only if the use accords with other provisions of § 363.[3] The principal restraint on use of cash proceeds is found in § 363(e), which specifies that the court shall condition the use of secured property “as is necessary to provide adequate protection of such interest.” Thus, when a creditor opposes a proposed use of cash collateral, the guiding inquiry is whether its security interests are “adequately protected” absent the additional protection that the cash collateral would provide. We now address that question with regard to the court order below, recognizing that the finding that there was adequate protection will not be overturned unless clearly erroneous. Dooley v. Weil (Matter of Barbara Garfinkle), 672 F.2d 1340, 1344 (11th Cir.1982); In re Jim Kelly Ford of Dundee, 14 B.R. 812, 816 (N.D.Ill. 1980).
B. Was Chrysler’s Security Interest Adequately Protected?
“Adequate protection” is not explicitly defined by the Bankruptcy Code. In determining whether a creditor’s secured interests are so protected, there must be an individual determination of the value of that interest and whether a proposed use of cash collateral threatens that value. Matter of Karl A. Neise, Inc., 16 B.R. 600, 601 (Bkrtcy.S.D.Fla.1981); H.R.Rep. No. 95-595, 95th Cong. 1st Sess. 339 (1977), U.S. Code Cong. & Admin.News 1978, pp. 5787, 6295. (“Though the creditor might not re *1020 ceive his bargain in kind, the purpose of the section is to insure that the secured creditor receives in value essentially what he bargained for.”); 2 Collier on Bankruptcy § 361.03 (1983).
Chrysler had a security interest in “all of (Ruggiere’s) Accounts Receivable, Contract Rights, Chattel Paper, Inventory, Equipment, and Fixtures, and all proceeds of any of the foregoing.” (Emphasis added). See 11 U.S.C.A. § 552(b) (West 1979). The value of that interest for purposes of determining “adequate protection” is limited to the lesser of the amount of the secured claim or. the amount of the collateral. LaJolla Mortg. Fund v. Rancho El Cajon, Inc., 18 B.R. 283, 286 (Bkrtcy.S.D.Cal.1982); 11 U.S.C.A. § 506(a) (West 1979). Because Chrysler’s secured claim far exceeded the value of Ruggiere’s collateral, the latter value governs.
At the time Ruggiere filed the Chapter 11 proceeding,[4] the car inventory was the principal element of collateral. The value of that inventory for purposes of “adequate protection” was its wholesale value because that is the “amount which the creditor would receive by its customary or commercially reasonable means of disposition” (i.e., sale to another automobile dealer). In re Klein, 10 B.R. 657, 660 (Bkrtcy.E.D.N.Y.1980). See also In re Thomas Parker Enterprises, Inc., 8 B.R. 207 (Bkrtcy.D. Conn.1981); In re Adams, 2 B.R. 313 (Bkrtcy.M.D.Fla.1980). Thus, because the value entitled to adequate protection was the wholesale value, allowing Ruggiere to use only gross profits and requiring that it remit the wholesale value to Chrysler did not impair the creditor’s secured interest. The district court order allowing use of those profits was not clearly erroneous.
The decision of the Bankruptcy Court is AFFIRMED.

. 11 U.S.C.A. § 301, et seq. (West 1979).

. The July 9 order specifically stated the following:
All prior restrictions on the use of the Debt- or’s gross profits arising from the sale of vehicles are removed. Debtor shall be allowed to utilize, for the purpose of operating its business, the gross profit on the sale of vehicles which has been generated since the filing of the Debtor’s Petition on June 15, 1982. In addition, Debtor shall be allowed to utilize in the operation of its business the gross profits that will be generated from the future sales of vehicles.
While the August 17th final order contained other specifications about the manner in which interest would be computed on the automobiles financed by Chrysler and discussed insurance payments and access to the debtor’s records, the issue argued by the parties is the authorization to use gross profits. We confine ourselves to that issue.

. 11 U.S.C.A. § 363(c)(2)(B) provides:
The trustee may not use, sell, or lease cash collateral ... unless
(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

. Value is determined as of the filing date. LaJolla Mortgage Fund v. Ranch El Cajon Assoc., 18 B.R. at 287; In re Barkley-Cupit Enterprises, Inc., 13 B.R. 86, 92 (Bkrtcy.N.D.Ga. 1981), aff’d, 677 F.2d 112 (5th Cir.1982).