**In re Thomas NIKOLAISEN and Claudia Nikolaisen, Debtors.**

**Bankruptcy No. 83–05597.**

United States Bankruptcy Court,
D. North Dakota.

March 31, 1984.

Daniel Wentz, Fargo, N.D., for debtor.

Rodney Webb, U.S. Atty., Fargo, N.D., for Commodity Credit Corp.

William Westphal, U.S. trustee.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

The Debtors, Thomas Nikolaisen and Claudia Nikolaisen, filed on March 13, 1984, a Motion requesting use of cash collateral to fund their spring planting operations. To obtain the cash needed, the Debtors proposed to sell grain stored on their farm and sealed under loan to Commodity Credit Corporation. The Commodity Credit Corporation, an agency of the United States Department of Agriculture, by the United States Attorney for the District of North Dakota, filed on March 20, 1984, an objection to the Debtors' proposed use of cash collateral. An expedited hearing on this matter was held before the undersigned on March 21, 1984, in Fargo, North Dakota.

## FINDINGS OF FACT

The Debtors are in the business of farming near the community of Cando, North Dakota. Mr. Nikolaisen plans to seed in 1984 602 acres of durum wheat and 720 acres of barley. Nikolaisen estimates that the yields from that planting will sell for approximately $104,000.00. Nikolaisen also expects to receive in 1984 $30,842.00 in set-aside proceeds. The Debtors have signed up for the 30% set-aside program. In the event of crop failure, the Debtors expect to receive a guaranteed minimum of $81,000.00 from his federal crop insurance. The grain which the Debtors propose to sell for cash proceeds is presently stored on their farm. The Debtors do not dispute that Commodity Credit Corporation holds a first lien on the stored grain. The Debtors merely propose to use the grain to fund the planting of the 1984 crops in exchange for the granting of a first lien upon all 1984 crops to Commodity Credit Corporation and an assignment of federal crop insurance proceeds.

## CONCLUSIONS OF LAW

The use of cash collateral is permitted pursuant to 11 U.S.C. § 363. Section 363 of the Bankruptcy Code applies particularly to the use of cash or instruments and documents which are the equivalent of cash. 11 U.S.C. § 363(a). Pursuant to section 363(d) of the Bankruptcy Code, a trustee or debtor-in-possession may obtain cash for use in the business of the debtor through the sale or lease of estate property. 11 U.S.C. § 363(d). The trustee may sell property to obtain cash for use in the business of the debtor, even where adverse parties claim interest in the property proposed to be sold. 11 U.S.C. § 363(e). Section 363(e) of the Bankruptcy Code provides:

Notwithstanding any other provision of this section, at any time, on request of any entity that has an interest in property used, sold or leased, or proposed to be used, sold, or leased, by the trustee, the court shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. In any hearing under this section, the trustee has the burden of proof on the issue of adequate protection.

11 U.S.C. § 363(e). The conversion of property to cash collateral is only permitted after a court determines the adverse interests in the property are adequately protected. *Id.* It is important to note that subsection 363(d) of the Bankruptcy Code is written in terms of "an entity that has an interest in property." Accordingly, any party which claims an interest in property of the debtor as collateral for their loan, may be subject to the sale of its collateral pursuant to 11 U.S.C. § 363(e). Generally, debtors in Chapter 11 turn to section 363 out of desperation when other avenues of financing have been unsuccessful. Farm debtors are no exception. Recently, the farm economy has been particularly depressed in North Dakota and farmers, aside from constant fluctuations in prices of farm products, the seasonal nature of farming are faced with extreme cash flow and financing problems. To provide a farm debtor with cash which can be used to revitalize his farm, part of a "fresh start", farmers in Chapter 11 situations often have no other source for cash flow other than property already in their possession. In the past, as in the instant situation presently before the Court, appeal has been made to this Court for use of cash collateral generated from the sale of Commodity Credit Corporation grain, reliance being placed on the provisions of section 363. As with debtors in general, farmers have sought this avenue of financing their farm operations when other more traditional means of financing have been fruitless.

Commodity Credit Corporation objects to the use of cash collateral in this instance on two grounds. First, the Debtors' conversion of grain and the use of its proceeds in their farming operations essentially places Commodity Credit Corporation in the posture of a lending institution. Commodity Credit argues that the agency was not formed for the purpose of extending operating loans to farmers. The agency merely administers price support programs, and does not have the personnel to counsel farmers on the use or application of operating funds. As previously outlined, however, any creditor's collateral may be converted to cash for use in the debtor's business pursuant to 11 U.S.C. § 363(e), notwithstanding the fact that the creditor may not be a lending institution. Chapter 11 has as its purpose the rehabilitation of debtors, including farmers, and the provisions of the Bankruptcy Code are available to farmers just as any other debtor without exception or exclusion. In an agricultural bankruptcy, the rehabilitative purposes of Chapter 11 may seem inimical with certain government programs such as the Commodity Credit Corporation set-aside program. Such an occurrence is, however, not peculiar to government programs nor to farmers. Practically any debtor in Chapter 11 seeking to use a creditor's collateral via section 363 is proceeding in a posture contrary to a creditor whose collateral is going to be disposed of. This Court has in the past not seen any reason to treat Commodity Credit Corporation facing a section 363 motion any differently than any other creditor in a similar position. As before stated, the referenced section makes the debtor's property subject to such use irrespective of who the adversely interested entity might be. Furthermore, Congress, when it drafted the Bankruptcy Code, was no doubt mindful that the provisions of the Code, including section 363, might well come into play so as to affect interests of the United States. Congress could have but it did not exclude such governmental interests from the effects of section 363, and this Court concludes that government programs such as Commodity Credit Corporation set-aside is thereby subject to section 363 as any other creditor would be. If Commodity Credit Corporation grain were deemed not available to section 363 use by a farmer as the United States claims, a dichotomy would exist which might well emasculate a farmer's ability to successfully reorganize. It would be a dichotomy because the Commodity Credit Corporation program is a set-aside program intended principally to assist farmers, the very individuals who by reason of financial distress have Commodity Credit grain as their only source of cash for ongoing operations. If Commodity Credit Corporation grain were excluded from section 363, then in many instances the very program intended to aid agricul-

ture would be the imminent implement of many farmers' financial ruin. It is principally for this reason that this Court, as a court of equity, must interpret the Bankruptcy Code, and in particular section 363 thereof, as applicable to government programs such as the Commodity Credit Corporation set-aside. In order to approve a sale or use of cash collateral, the Court must merely find that the debtor's offer of protection to that creditor's interest is adequate protection. Commodity Credit's first objection, therefore, is without merit.

Commodity Credit's final objection to the use of cash collateral in this instance is that the Debtors' offer of protection is not adequate. Commodity Credit argues that the Debtors' offer of future interest is too speculative and is not the equivalent of Commodity Credit's present interest in the certified, stored grain. This Court finds, however, that it is virtually certain, between a first lien on 1984 crops and an assignment of crop insurance proceeds, that Commodity Credit will be insured a return of its interests. The Debtors have clearly shown that the use of cash collateral is necessary to continue their efforts at reorganizing their farming operation. Further, the strained relationship between the Debtors and the local financial institutions has been abundantly disclosed to this Court. The Court recognizes that it is extremely unlikely that the Debtors will be able to obtain financing of their spring operations from any other source than the presently proposed use of cash collateral. Finally, the Court finds that the Debtors offer of protection is adequate under these circumstances.

Accordingly,

IT IS ORDERED that the Debtors, Thomas Nikolaisen and Claudia Nikolaisen, shall and are hereby authorized the use of cash proceeds realized from the sale of commodities in which the Commodity Credit Corporation holds a current security interest in an amount not to exceed Eighty Thousand Dollars ($80,000.00).

IT IS FURTHER ORDERED that Commodity Credit Corporation shall be granted a first and prior lien position as to all 1984 crops grown by the Debtors, and that such lien shall exist by virtue of this Order, and that such lien shall be in an amount not to exceed Eighty Thousand Dollars ($80,000.00). The Commodity Credit Corporation shall have leave of Court to request of the Debtors, and the Debtors are hereby authorized to execute, traditional security agreements and filings. Further, the Debtors shall assign to Commodity Credit Corporation 1984 Federal Crop Insurance proceeds in an amount not to exceed Eighty Thousand Dollars ($80,000.00). The assignment of such proceeds shall exist by virtue of this Order. The Commodity Credit Corporation shall have leave of Court to request of the Debtors, and the Debtors are hereby authorized to execute, assignment documents.

IT IS FURTHER ORDERED that in addition to the reports traditionally filed by debtors with the United States Trustee, the Debtors, Thomas Nikolaisen and Claudia Nikolaisen, shall provide to Commodity Credit Corporation an accounting of all commodities shipped and sold pursuant to this Order, and such accounting shall specify the following:

a. Type of commodity or grain sold;

b. Price received;

c. Party to whom the commodities were sold; and

d. Photocopies of all scale or weight tickets received for the sale and shipment of the commodities hereby authorized.