**In the Matter of ANNETT FORD, INC., Debtor.**

**Bankruptcy No. BK80–1682.**

United States Bankruptcy Court, D. Nebraska.

Dec. 20, 1985.

Jess Nielsen of Nielsen & Birch, North Platte, Neb., for Ford Motor Credit Co.

Donald Girard, North Platte, Neb., for First Nat. Bank of Gordon.

Royce Norman, North Platte, Neb., for Kelley, Scritsmier, et al.

Peter Taylor, Washington, D.C., for the I.R.S.

## MEMORANDUM OPINION

TIMOTHY J. MAHONEY, Bankruptcy Judge.

This matter came before the Court in North Platte, Nebraska, on December 4, 1985, on a motion for allowance of fees as an administrative expense filed by Kelley, Scritsmier, Moore and Byrne, P.C.; motion for allowance of United States of America (Internal Revenue Service) claim as an administrative expense and motion for final settlement pursuant to plan of reorganization.

### Facts

Debtor was a Ford Motor dealership in North Platte, Nebraska, which filed a petition under Chapter 11 of the Bankruptcy Code on August 4, 1980. The debtor continued to operate the Ford dealership through 1980, all of 1981 and part of 1982 before a liquidating plan was proposed by creditor, Ford Motor Credit Company (Ford). Eventually a liquidating plan was proposed and confirmed with a representative of Ford appointed to the Board of Directors, a representative of the First National Bank of Gordon appointed to the Board of Directors and a representative of the Annett family appointed to the Board of Directors for the purpose of carrying out the terms of the plan.

All of the assets of the debtor were sold and the funds paid into the Court pending direction for distribution. The funds on hand as of September 30, 1985, including interest, amount to $134,504.40.

Ford claims and has claimed throughout the administration of this estate, that it has a valid perfected security interest in all of the assets of the debtor, subject only to certain administrative claims of the First National Bank of Gordon and the attorney fees for the attorneys representing the debtor under the liquidating plan.

The Internal Revenue Service claims that it is owed $21,875.64 plus interest and penalties accruing from and after May 4, 1984, for payroll taxes incurred during the operation of the business post petition but prior to the date of confirmation of the liquidating plan. Internal Revenue Service claims that such taxes, interest and penalties are an administrative expense pursuant to § 503(b)(1)(B) and pursuant to § 503(b)(1)(C). Internal Revenue Service further claims that such administrative expenses have first priority under the provisions of the Bankruptcy Code, Section 507(a)(1). Finally, the Internal Revenue Service claims that in order for the liquidating plan to be confirmed under § 1129(a)(9)(A) the plan had to provide that on the effective date of the plan holders of claims for administrative expenses specified in § 507(a)(1) would receive cash equal to the allowed amount of the claim and further that the plan itself at Article I and Article II actually did provide that claims entitled to priority under § 507 would be paid in cash and that such claims were not impaired.

Based upon the above, the Internal Revenue Service objects to the proposed final settlement requested by Ford.

The law firm of Kelley, Scritsmier, et al., was the original law firm for the debtor-in-possession. The law firm filed the original petition and schedules and was authorized an attorney fee in the amount of $1,699.75 plus expenses in the amount of $95.01 by Court order dated March 18, 1981. The law firm claims that such fees have not been paid and should be considered an administrative expense to which the proceeds of collateral claimed by Ford should be subject. The law firm bases its claim on § 503(b)(2) which provides that there shall be allowed administrative expenses including compensation and reimbursement awarded under § 330(a). Since the fees of the law firm were approved under § 330(a), the law firm argues that they should be treated as an administrative expense and be payable out of the proceeds of the collateral of the secured creditor, Ford.

Naturally enough, Ford doesn't agree that its collateral or the proceeds of the sale of its collateral should be subject to the administrative expense claims of the Internal Revenue Service or the original attorney for the debtor.

This case has been pending since August of 1980. It consists of at least four volumes of pleadings, correspondence, claims, journal entries and other miscellaneous material. At the hearing on December 4, 1985, no evidence was taken, although each of the parties was given an opportunity to argue their position.

The Internal Revenue Service, in its written pleadings, states that it does not accept the claim of Ford that the cash which is now being held by the Court is all subject to the secured claim of Ford. However, the Internal Revenue Service did not bother to attempt to obtain a determination of the secured status of Ford prior to this time and, therefore, this Court will not consider the objection of the Internal Revenue Service concerning that matter. The debtor filed its petition on August 4, 1980. It continued to operate its business and in December of 1980, counsel for Ford wrote to the Court that Ford believed it was in the best interest of the debtor and the estate for the business to continue in operation and, therefore, Ford would agree to the use of certain cash collateral for purchase of replacement inventory under terms by which Ford would be paid some amount from the sale of vehicles and inventory which were collateral of Ford.

In January of 1981 an order was entered approving the use of cash collateral by the debtor which actually permitted the debtor to continue in operation.

Later in 1981 and early 1982 it became apparent that the dealership could not make it and Ford filed its liquidating plan which was eventually approved. The payroll taxes which were incurred during 1981 and 1982 came as a result of the continuing operation of the business which Ford was aware of and which Ford agreed to. The correspondence in the file and the Court order in January of 1981 lead this Court to believe that all of the parties, including Ford and including Judge Crawford believed that it would be of benefit to the estate and to the secured creditor to continue the business as an ongoing concern rather than have an immediate liquidation and receive auction or wholesale prices for the assets rather than retail prices. Based upon such correspondence and the order in January of 1981, this Court concludes that the continued operation of the business was of benefit to Ford.

The law firm representing the debtor filed the petition and the schedules and apparently provided services at a reasonable rate to the debtor which benefited the estate and benefited Ford by helping the debtor to stay open during the early months of the bankruptcy proceeding.

### Issue

Shall the proceeds of collateral in which Ford holds a perfected security interest be subject to administrative expenses of payroll taxes, interest and penalty and attorney fees of the debtor-in-possession?

### Decision

The payroll taxes and the attorney fees of the debtor-in-possession are payable out

of the fund which represents the proceeds of the collateral of the creditor. The penalties and interest accruing as a result of the failure to pay the payroll taxes on a timely basis are not to be paid out of the collateral.

### Conclusions of Law

Although this court did not hold an evidentiary hearing on December 4, 1985, arguments of counsel made the Court aware of the various proceedings which resulted in the need for the December 4, 1985, hearing. This Court informed counsel at the hearing that it would attempt to determine whether or not the administrative expenses could be paid out of the proceeds of the collateral and if it could not be so determined based upon the record, briefs would be requested or an evidentiary hearing would be scheduled. For purposes of this opinion, this Court has taken judicial notice of the files and has read the files. There have been at least two hearings on previous motions for final settlement which are identical to the one on file at this time. In each case Judge Crawford refused to approve the proposed settlement. In each case all of the parties filed the same objections and requests for determination of the administrative expense status. The last time Judge Crawford refused to approve the proposed distribution Ford attempted to appeal to the District Court. The District Court eventually found that such an appeal was interlocutory in nature and remanded it to this Court.

Except for the question of whether or not payroll taxes and attorney fees benefited the secured creditor, all other matters before this Court can be decided as a matter of law. In order to determine the question concerning "benefit" to the secured creditor, this Court has reviewed the file and believes that if an evidentiary hearing were held a factual determination such as the one at the beginning of this opinion would be made. Therefore, this Court will not hold an evidentiary hearing.

The Internal Revenue Service requests that the payroll taxes, interest and penalty be treated as an administrative expense. The Court does find that they should be treated as an administrative expense.

The law firm requests that its fees be treated as an administrative expense. This Court does find that they should be treated as an administrative expense.

The Court has previously ruled on June 21, 1984, that the claims of the First National Bank of Gordon are to be treated as an administrative expense and that the wages of Betty Annett are to be treated as an administrative expense. The order concerning such wages was entered on or about July 19, 1984.

The motion for final settlement pursuant to plan of reorganization as filed by Ford provides that the fund should be used to pay First National Bank of Gordon $5,000 which represents the proceeds of the sale of a vehicle upon which the Bank had a first lien and to pay the First National Bank for cash advanced during the operation of the business in the amount of $13,544.48. The reason for this payment is the advance constituted actual, necessary costs and expenses of preserving the estate as provided by § 503(b)(1)(A) of the Code.

The motion for final settlement at Paragraph 9 states that the movant is unaware of any administrative expense other than the Bank which benefited or otherwise were incurred for the purpose of preserving or protecting the security or the proceeds.

The section of the Code that is applicable in this case is 11 U.S.C. § 506(c) which provides that the trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim. Therefore, in order to receive payment from the funds claimed by the secured claimant, the applicant must show that the expenses incurred were reasonable and necessary costs of preservation or disposition of the secured property and must show the benefit to the secured claimant.

Ford has already agreed in the motion that the amounts payable to the First National Bank of Gordon are reasonable necessary costs and expenses and did benefit Ford. Therefore, those payments are to be made immediately.

The debtor-in-possession operated the business after the filing of the petition and operated the business with the full knowledge of and consent of Ford. As mentioned above, apparently everybody thought that continuing the business was in the best interests of the estate and the secured creditor and perhaps believed that a sale of the business as a going concern would bring more for all claimants than a dismantling and liquidation of it immediately. The payroll taxes, attorney fees and wages of Mrs. Annett were incurred during the operation of this "going concern".

In 1984 the Eighth Circuit Court of Appeals determined that the correct analysis by the Bankruptcy Court was to look at the benefit received by the creditor as a result of the administrative expenses and, if the creditor did receive actual benefit, the creditor's collateral was subject to the administrative expenses. If there was no benefit, there was no payment from the collateral. *Brookfield Production Credit Association vs. Borron*, 738 F.2d 951 (8th Cir.1984). In the *Brookfield* case, the Court found that the Bankruptcy Court and the District Court were not incorrect in determining that the feeding of poultry during the pendency of a Chapter 11 case did not benefit the secured creditor and, therefore, the cost of such feeding and maintenance could not be charged to the creditor.

The decision in *Brookfield* rests upon a factual determination. Other courts have found that the preservation of the going concern value of a business can constitute a benefit to the secured creditor. See *In re AFCO Enterprises, Inc.*, 35 B.R. 512, 515 (B.C.D.Utah 1983). See also *In re Hamilton*, 18 B.R. 868 at 873 (B.C.D.Colo.1982). *In re Jim Kelly Ford of Dundee, Ltd.*, 14 B.R. 812, 816–817 (N.D. Ill., 1980).

In the *AFCO* case the Court stated at page 515:

"While, as a general rule, secured creditors should not be charged with the expenses of administration, the courts have carved out an exception based upon the doctrine of unjust enrichment. When the secured creditor is the only entity which is benefited by the trustee's work, it should be the one to bear the expense. It would be unfair to require the estate to pay such costs where there is no corresponding benefit to unsecured creditors."

The *AFCO* debtor operated a resort and the trustee continued the operation of the resort until it could be sold as a going concern. When the trustee requested payment for service and expenses during such operation, the secured creditor objected. The Court found that the business decision of the trustee to continue the operation of the resort in order to obtain a better return at the sale was in the best interests and of benefit to the secured creditor. Therefore, those costs should be paid from the proceeds of the sale.

■ In this case, Judge Crawford apparently accepted the going concern theory and permitted proceeds from the sale of inventory to be used as a "fund" to purchase new inventory. No appeal was taken by the creditor from that order and as a matter of fact the creditor agreed with the use of the proceeds and the continuing operation of the business. Therefore, creditor knew that the operation would continue and that operating expenses, including taxes would be incurred. The hope was that by such continuing operation the return to the creditor in an eventual liquidation or successful reorganization would exceed the return to the creditor from an auction sale. This Court finds that the continuing operation of the business was to the benefit of the secured creditor, Ford. All of the administrative expenses claimed, taxes, attorney fees and wages were incurred as a result of the operation of the business and, therefore, did benefit the creditor and should be paid.

■ However, the penalties and interest on the unpaid taxes did not benefit the creditor and shall not be paid.

*Conclusion*

The motion for final settlement pursuant to the plan of reorganization is approved pursuant to the above Memorandum Opinion. The funds shall be distributed to the First National Bank of Gordon as requested in the motion; to the attorneys for the liquidating corporation as previously approved by the Court; to the Internal Revenue Service in the amount of the taxes owing, and not including interest or penalty; to the applicant law firm in the amount approved by the Court previously; to Mrs. Annett in the amount approved by the Court previously; to Ford Motor Credit Company, the balance after all of the above payments are made.

After this order is final and unappealable, the payments shall be made and this case closed.

Separate journal entry shall be entered.